JUDGE FORREST

14 CV 7931

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH STILWELL and STILWELL VALUE LLC,

Plaintiffs,

v.

SECURITIES AND EXCHANGE COMMISSION,

Defendant.

14-cv-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

Joseph Stilwell ("Mr. Stilwell") and Stilwell Value LLC ("Stilwell Value") (collectively, "Stilwell" or "Plaintiffs") for their complaint against the Securities and Exchange Commission ("SEC" or the "Commission") allege as follows:

**Preliminary Statement**

1. SEC administrative proceedings violate Article II of the U.S. Constitution, which states that the "executive Power shall be vested in a President of the United States of America."

2. An SEC Administrative Law Judge ("SEC ALJ") presides over an administrative proceeding. Statutes and regulations make clear that SEC ALJs are executive branch "officers" within the meaning of Article II. The Supreme Court has held that such officers – charged with executing the laws, a power vested by the Constitution solely in the President – may not be separated from Presidential supervision and removal by more than one layer of tenure protection. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 561 U.S. 477 (2010) ("*Free Enterprise*"). In particular, if an officer can only be removed from office for good cause, then the decision to remove that officer cannot be vested in another official who, too, enjoys good-cause tenure. *Id.*

3. Yet SEC ALJs enjoy at least two – and likely more – layers of tenure protection. The SEC administrative proceedings therefore violate Article II and are unconstitutional.

4. The SEC has stated that it intends to initiate imminently an SEC administrative proceeding against Stilwell.

5. Declaratory and injunctive relief is necessary to prevent Stilwell from being compelled to submit to an unconstitutional proceeding and from suffering irreparable reputational and financial harm – all without meaningful judicial review.

**Jurisdiction, Venue, and Parties**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, 2201 and 5 U.S.C. §§ 702 and 706. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

7. It is appropriate and necessary for this Court to exercise jurisdiction over Plaintiffs' claim because (a) without judicial review at this stage, meaningful judicial review will be foreclosed; (b) Plaintiffs' claim is wholly collateral to the review provisions of the securities laws; and (c) Plaintiffs' claim is not within the particular expertise of the SEC.

8. Mr. Stilwell is a natural person, citizen of the State of New York, and resident of New York County, New York.

9. Stilwell Value is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in New York County, New York. Mr. Stilwell is the managing member of Stilwell Value.

10. Stilwell Value serves as the general partner and investment adviser to a series of funds, which are limited partnerships; Mr. Stilwell serves as general partner to one such fund.

11. The SEC is an agency of the United States government, headquartered in Washington, D.C.

**Background**

12. Mr. Stilwell formed the first Stilwell fund in 1993 with a handful of investors, family, and friends. At inception, the firm had approximately $950,000 under management. Since then, the organization has grown step by step. Today, it has assets under management of approximately $200 million. Mr. Stilwell has retained a steady core of investors over that time; today, his funds serve approximately 192 investors.

13. Mr. Stilwell's area of expertise is activism in the banking and insurance sectors. Specifically, Mr. Stilwell's limited partners come to him in large part for his ability to identify undervalued companies in those industries, obtain a level of influence in those companies by acquiring a significant ownership stake through the stock market, and use that influence to help turn the companies around, attempting to raise the share price and thereby the value of his limited partners' investments.

14. Until early 2012, Mr. Stilwell ran his firm as an unregistered investment adviser, because registration was not required under the regulatory regime prevailing at that time.

15. In early 2012, as newly required by Section 403 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203), Stilwell Value registered with the SEC as an investment adviser. The SEC approved Stilwell Value's registration effective March 19, 2012.

**The SEC's Exam and Investigation**

16. In late July 2012, some four months after Stilwell Value's registration as an investment adviser became effective, the SEC initiated an examination of Stilwell Value pursuant to Section 204 of the Investment Advisers Act of 1940 (the "exam").

17. On or about November 27, 2012, while the exam was still ongoing, the SEC issued an order directing its enforcement staff in New York City to initiate an investigation into certain inter-fund loans appearing on Stilwell's books.

18. The SEC has asserted that the inter-fund loans, all of which are now closed, represented a conflict of interest and, accordingly, should have been contemporaneously disclosed to investors.

19. At the time of the exam, some of those inter-fund loans had been repaid with interest; two were outstanding.

20. During the course of the investigation, the two outstanding loans were repaid, with interest. As a result, today there are no outstanding loans between the Stilwell funds.

21. No investor was harmed as a result of the inter-fund loans.

22. Mr. Stilwell did not incur any personal pecuniary benefit from the inter-fund loans.

23. Certain of the inter-fund loans were disclosed in the applicable Stilwell funds' audited financial statements. Those financial statements were made available to investors upon request; a small number of investors requested and received them. No investor who received those audited financial statements disclosing the loans responded by complaining about the inter-fund loans, or expressing any displeasure or disagreement about the inter-fund loans.

24. Similarly, early in the investigation, the then-outstanding inter-fund loans were disclosed in an annual letter to investors. Thereafter, Stilwell updated Part 2A of its Form ADV to fully disclose the loans, and distributed that document to all Stilwell investors. After the annual letter was sent to investors, and after the Form ADV Part 2A amendment was distributed,

none of the investors responded by complaining about the inter-fund loans, or expressing any displeasure or disagreement about the inter-fund loans.

25. During the course of the investigation, Stilwell hired both a new general counsel and a new chief compliance officer, each with significant compliance and industry experience.

26. On October 23, 2013, the SEC issued Wells notices indicating that it had reached a preliminary conclusion that Stilwell had violated the federal securities laws. The SEC's primary theory of liability was – and indeed still is – that Stilwell violated the Investment Advisers Act Sections 206(1), 206(2), 206(4), 207 and Rules 206(4)-7 and 206(4)-8 thereunder, by executing the inter-fund loans and failing to disclose them because they were conflict of interest transactions. The SEC takes the position that Stilwell was not only negligent, but committed an intentional fraud by failing to disclose the loans more fully than they were disclosed.

27. Mr. Stilwell provided a written submission in response to the SEC's Wells notices setting forth the reasons why such charges would be inappropriate and unwarranted and why the evidence plainly contradicts the SEC's fraud theory.

**The SEC's Chosen Forum and Sanction**

28. The securities laws provide the SEC with the discretion – guided by no statute, regulation, or established practice – to bring an enforcement action either in federal district court or in internal SEC administrative proceedings.

29. On or about July 24, 2014, the SEC staff indicated to counsel for Stilwell the Commission's intent to file charges against Stilwell unless Stilwell agreed to draconian settlement terms that would inflict a significant risk of financial harm to Stilwell's investors.

30. During the same July 2014 conversation, the SEC staff also informed counsel for Stilwell that the SEC would bring its enforcement action promptly, and would do so in an SEC administrative proceeding, rather than in federal district court. Based on these representations by the SEC staff, Stilwell believes that the commencement of the enforcement action will become imminent after Mr. Stilwell's second day of investigative testimony before the SEC, which concluded on September 30, 2104.

***The Administrative Proceeding***

31. An administrative proceeding is an internal SEC hearing, litigated by SEC trial attorneys and governed by the SEC's Rules of Practice ("Rules of Practice," or "RoP"), in which an SEC ALJ serves as finder of fact and of law.

32. Unlike federal court, administrative proceedings do not afford juries to litigants.

33. The Federal Rules of Civil Procedure do not apply in an administrative proceeding; they do apply in federal court.

34. Similarly, the Federal Rules of Evidence do not apply in an administrative proceeding as they do in federal court. Any evidence that "can conceivably throw any light upon the controversy," including hearsay, "normally" will be admitted in an administrative proceeding. *In the Matter of Jay Alan Ochanpaugh*, Exchange Act Rel. No. 54363, 2006 SEC LEXIS 1926, *23 n.29 (Aug. 25, 2006).

35. Discovery is limited in administrative proceedings. Unlike in federal court, depositions are generally not allowed. RoP 233, 234.

36. The SEC Rules of Practice do not provide respondents the opportunity to test the SEC's legal theories before trial via motions to dismiss, which are available in federal court.

37. The SEC Rules of Practice do not allow respondents to assert counterclaims against the SEC. Federal court defendants may assert counterclaims against their adversaries.

38. The SEC Rules of Practice require the hearing to take place, at most, approximately four months from the issuance of the SEC's Order Instituting Proceedings ("OIP"). In its discretion, the SEC can require the hearing to occur as early as one month after the OIP is issued. The SEC does not need to start making available the limited discovery afforded to administrative proceeding respondents until seven days after the OIP is issued.

39. Some observers have found that the SEC has succeeded much more often in administrative proceedings, where it enjoys the procedural advantages described above, than in federal district courts. Gretchen Morgenson, *At the S.E.C., a Question of Home-Court Edge*, N.Y. TIMES, Oct. 5, 2013.

40. Any appeal from the SEC ALJ's decision goes to the SEC itself: the very body which, prior to the administrative proceeding, determined that an enforcement action was warranted – and the SEC is empowered to decline to hear the appeal, or to impose even greater sanctions. A final order of the Commission, after becoming effective, may then be appealed to a United States Court of Appeals.

**SEC ALJs**

41. SEC ALJs, who preside over administrative proceedings, exercise authority and discretion that makes them officers for the purposes of Article II of the U.S. Constitution.

***Broad Discretion to Exercise Significant Power***

42. SEC ALJs enjoy broad discretion to exercise significant authority with respect to administrative proceedings. Under the SEC Rules of Practice, an SEC ALJ – referred to in the Rules of Practice as the "hearing officer" – is empowered, within his or her discretion, to perform the following, among other things:

a. Take testimony. RoP 111.

b. Conduct trials. *Id.*

c. Rule on admissibility of evidence. RoP 320.

d. Order production of evidence. RoP 230(a)(2), 232.

e. Issue orders, including show-cause orders. *See, e.g.*, 17 CFR 201.141(b); *In the Matter of China Everhealth Corp.*, Admin. Proc. Rel. No. 1639, 2014 SEC LEXIS 2601 (July 22, 2014).

f. Rule on requests and motions, including pre-trial motions for summary disposition. *See, e.g.*, RoP 250(b).

g. Grant extensions of time. RoP 161.

h. Dismiss for failure to meet deadlines. RoP 155(a).

i. Reconsider their own or other SEC ALJs' decisions. RoP 111(h).

j. Reopen any hearing prior to the filing of a decision. RoP 111(j).

k. Amend the SEC's OIP. RoP 200(d)(2).

l. Impose sanctions on parties for contemptuous conduct. RoP 180(a).

m. Reject filings that do not comply with the SEC's Rules of Practice. RoP 180(b).

n. Dismiss the case, decide a particular matter against a party, or prohibit introduction of evidence when a person fails to make a required filing or cure a deficient filing. RoP 180(c).

o. Enter orders of default, and rule on motions to set aside default. RoP 155.

p. Consolidate proceedings. RoP 201(a).

q. Grant law enforcement agencies of the federal or state government leave to participate. RoP 210(c)(3).

r. Regulate appearance of amici. RoP 210(d).

s. Require amended answers to amended OIPs. RoP 220(b).

t. Direct that answers to OIPs need not specifically admit or deny, or claim insufficient information to respond to, each allegation in the OIP. RoP 220(c).

u. Require the SEC to file a more definite statement of specified matters of fact or law to be considered or determined. RoP 220(d).

v. Grant or deny leave to amend an answer. RoP 220(e).

w. Direct the parties to meet for prehearing conferences, and preside over such conferences as the ALJ "deems appropriate." RoP 221(b).

x. Order any party to furnish prehearing submissions. RoP 222(a).

y. Issue subpoenas. RoP 232.

z. Rule on applications to quash or modify subpoenas. RoP 232(e).

aa. Order depositions, and act as the "deposition officer." RoP 233, 234.

bb. Regulate the SEC's use of investigatory subpoenas after the institution of proceedings. RoP 230(g).

cc. Modify the Rules of Practice with regard to the SEC's document production obligations. RoP 230(a)(1).

dd. Require the SEC to produce documents it has withheld. RoP 230(c).

ee. Disqualify himself or herself from considering a particular matter. RoP 112(a).

ff. Order that scandalous or impertinent matter be stricken from any brief or pleading. RoP 152(f).

gg. Order that hearings be stayed while a motion is pending. RoP 154(a).

hh. Stay proceedings pending Commission consideration of offers of settlement. RoP 161(c)(2).

ii. Modify the Rules of Practice as to participation of parties and amici. RoP 210(f).

jj. Allow the use of prior sworn statements for any reason, and limit or expand the parties' intended use of the same. RoP 235(a), (a)(5).

kk. Express views on offers of settlement. RoP 240(c)(2).

ll. Grant or deny leave to move for summary disposition. RoP 250(a).

mm. Order that hearings not be recorded or transcribed. RoP 302(a).

nn. Grant or deny the parties' proposed corrections to hearing transcript. RoP 302(c).

oo. Issue protective orders governing confidentiality of documents. RoP 322.

pp. Take "official notice" of facts not appearing in the record. RoP 323.

qq. Regulate the scope of cross-examination. RoP 326.

rr. Certify issues for interlocutory review, and determine whether proceedings should be stayed during pendency of review. RoP 400(c), (d).

***The SEC ALJ's Decision***

43. At the close of an administrative proceeding, the SEC ALJ issues his or her decision, referred to in the Rules of Practice as the "initial decision." RoP 360. The initial decision states the time period within which a petition for Commission review of the initial decision may be filed. The SEC ALJ exercises his or her discretion to decide that time period.

44. The initial decision becomes the final decision of the SEC after the period to petition for review expires, unless the Commission takes the SEC ALJ's decision up for review. With certain exceptions that do not apply to this matter, the Commission is not required to take up any SEC ALJ's decision for review.

45. As applied to this matter, Commission review is entirely discretionary. The Commission can deny a petition for review for any reason, after considering whether the petition for review makes a reasonable showing that (i) the decision embodies a clearly erroneous finding of material fact, an erroneous conclusion of law, or an exercise of discretion or decision of law or policy that is "important"; or (ii) a prejudicial error was committed during the proceeding.

46. If no party requests review, and if the Commission does not undertake review on its own initiative, no Commission review occurs. Instead, the Commission enters an order that the decision has become final, and "the action of [the] administrative law judge . . . shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission." 15

U.S.C. § 78d-1(c). The order of finality states the date on which sanctions imposed by the SEC ALJ, if any, will become effective. RoP 360(d)(2).

47. Nothing in the rules or statutes prevents the Commission from making the ALJ's sanction effective before the respondent has had an opportunity to appeal the Commission's order, and in fact the Commission routinely makes sanctions effective immediately. *See, e.g., In the Matter of Mark Andrew Singer*, Exchange Act Rel. No. 72996, 2014 SEC LEXIS 3139 (Sept. 4, 2014).

***The Position of SEC ALJ***

48. The SEC is a "Department" of the Executive Branch of the U.S. Government. The individual Commissioners are the "heads" of the Department. *Free Enterprise*, 130 S. Ct. at 3163. The Commissioners appoint SEC ALJs.

49. The ALJ position is established by statute, which provides that each agency "shall" appoint as many ALJs as necessary for the agency's administrative proceedings. 5 U.S.C. § 3105.

50. The Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*., establishes ALJs' powers with respect to adjudication. 5 U.S.C. §§ 556, 557. The securities laws empower the SEC to delegate certain functions to SEC ALJs, including those listed above at paragraphs 42.a through 42.rr and 43 through 46. 15 U.S.C. §78d-1.

51. SEC regulation establishes the "Office of Administrative Law Judges," and outlines their authority. *See, e.g.*, 17 C.F.R. § 200.14; 17 C.F.R. § 200.30-9; 17 C.F.R. § 201.111. Those regulations provide that SEC ALJs' authority with respect to adjudications is to be as broad as the APA allows. 17 C.F.R. § 201.111 ("No provision of these Rules of Practice

shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557.").

52. The salary of SEC ALJs is specified by statute. There are eight levels of basic pay for ALJs, the lowest of which may not be less than 65% of the rate of basic pay for level IV of the Executive Schedule, and the highest of which may not be more than the rate of basic pay for level IV of the Executive Schedule. 5 U.S.C. § 5372. (The Executive Schedule is a system of salaries given to the highest-ranked appointed positions in the executive branch of the U.S. government. 5 U.S.C. § 5311.)

53. The means of appointing an ALJ is specified by statute. Appointments are made by agencies based on need. 5 U.S.C. § 3105. By regulation, ALJs may be appointed only from a list of eligible candidates provided by the Office of Personnel Management ("OPM") or with prior approval of OPM. 5 C.F.R. § 930.204. OPM selects eligible candidates based on a competitive exam, which OPM develops and administers. The SEC, like other agencies, selects ALJs from OPM's list of eligible candidates, based on the SEC's need. 5 U.S.C. § 3105; 5 C.F.R. § 930.204.

54. All ALJs receive career appointments and are exempt from probationary periods that apply to certain other government employees. 5 C.F.R. § 930.204(a). They do not serve time-limited terms.

55. SEC ALJs are "officers" of the United States due, among other things, to the significant authority they exercise; the broad discretion they are afforded; their career appointments; that they are appointed by the heads of an Executive Department; the statutory and regulatory requirements governing their duties, appointment, and salary; the statutory authority

creating their position; and their power, in certain instances, to issue the final decision of the agency.

***Removal of SEC ALJs***

56. SEC ALJs are removable from their position by the SEC "only" for "good cause," which must be "established and determined" by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a).

57. This removal procedure involves two or more levels of tenure protection.

58. First, as noted, SEC ALJs are protected by statute from removal absent "good cause." 5 U.S.C. § 7521(a).

59. Second, the SEC Commissioners, who exercise the power of removal, are themselves protected by tenure. They may not be removed by the President from their position except for "inefficiency, neglect of duty, or malfeasance in office." *See, e.g.*, *Free Enterprise*, 130 S. Ct. at 3148; *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).

60. Third, members of the MSPB, who determine whether sufficient "good cause" exists to remove an SEC ALJ, are also protected by tenure. They are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

**The SEC ALJs' Removal Scheme Violates Article II's**
**Vesting of Executive Power in the President**

61. As executive officers, SEC ALJs may not be protected by more than one layer of tenure.

62. Article II of the U.S. Constitution vests "[t]he executive Power . . . in a President of the United States of America," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.*, § 3. In light of "[t]he impossibility that one man should be able to perform all the great business of the State," the Constitution provides for executive officers to

"assist the supreme Magistrate in discharging the duties of his trust." 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939); *see also Free Enterprise*, 561 U.S. 477, 130 S. Ct. at 3146.

63. Article II's vesting authority requires that the principal and inferior officers of the Executive Branch be answerable to the President and not be separated from the President by attenuated chains of accountability. Specifically, as the Supreme Court held in *Free Enterprise*, Article II requires that executive officers, who exercise significant executive power, not be protected from being removed by their superiors at will, when those superiors are themselves protected from being removed by the President at will.

64. The SEC ALJs' removal scheme is contrary to this constitutional requirement because SEC ALJs are inferior officers for the purposes of Article II, Section 2 of the U.S. Constitution, and because:

a. SEC ALJs are protected from removal by a statutory "good cause" standard; and

b. The SEC Commissioners who are empowered to seek removal of SEC ALJs – within the constraints of the "good cause" standard – are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard; and

c. The MSPB members who are empowered to effectuate the removal decision – again limited by a "good cause" standard – are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard.

65. Under this attenuated removal scheme, "the President cannot remove an officer who enjoys more than one level of good-cause protection, even if the President determines that the officer is neglecting his duties or discharging them improperly. That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This

contravenes the President's 'constitutional obligation to ensure the faithful execution of the laws.'" *Free Enterprise*, 130 S. Ct. at 3147 (quoting *Morrison v. Olson*, 487 U.S. 654, 693 (1988)).

66. Because the President cannot oversee SEC ALJs in accordance with Article II, SEC administrative proceedings violate the Constitution.

**The SEC's Chosen Course Will Cause Stilwell Severe and Irreparable Harm**

67. Without injunctive relief from this Court, Plaintiffs will be required to submit to an unconstitutional proceeding. This violation of a constitutional right, standing alone, constitutes an irreparable injury. The lack of traditional procedural safeguards in SEC administrative proceedings further exacerbates that harm.

68. Allowing the SEC to pursue an administrative proceeding while the instant complaint is pending would require the expenditure of substantial legal fees defending against an unconstitutional action. Moreover, plaintiffs cannot assert counterclaims or seek declaratory relief in an administrative proceeding, foreclosing any possibility of review until an appeal to a federal circuit court of appeals. The burdens incurred during an administrative proceeding would be for naught, because such administrative proceeding is unconstitutional and the SEC likely would try to reprise its case in a lawful setting, such as federal district court. However, forcing Stilwell to litigate twice would compound costs, lost time, and reputational risk.

69. Furthermore, if Stilwell were to lose in an administrative proceeding, the damage could be severe and irreversible, well before Stilwell could obtain meaningful judicial review of the Article II claim.

70. This severe harm, which threatens to damage Stilwell's business and the investments of the approximately 192 limited partners, is irreparable. The availability of an

appeal after an administrative proceeding to a federal circuit court of appeals cannot avoid it, because the administratively-imposed sanction already may take effect – and the damage therefore already substantially and harmfully done – by the time the appellate court made a ruling.

71. Likewise, the harm cannot be remedied after the fact by money damages. Various immunity doctrines substantially constrain Stilwell's ability to seek damages from the SEC. Furthermore, even if damages were procedurally available, the reputational harm to Stilwell – possibly permanent and devastating to Stilwell's trust-based investment business – should the SEC impose administrative sanctions would be impossible to monetize. And because Stilwell's business model involves purchasing and maintaining positions in undervalued companies, many of which are thinly traded, accurately calculating the value of the lost ownership opportunities that would result from an unfavorable ruling in an unconstitutional administrative proceeding would be well-nigh impossible.

72. By contrast, the SEC will suffer no harm from a pause in an administrative proceeding against Stilwell pending final resolution of this important constitutional issue. Any claim of harm by the SEC would be particularly fanciful because the SEC maintains the option of bringing its enforcement action against Stilwell in federal court, as it routinely does with other investment advisers. Moreover, the inter-fund loans that were the subject of the SEC's investigation caused no pecuniary harm to investors. The fact that all of the loans have been fully repaid underscores further that there is no risk of current or future harm. Therefore, no investor would be adversely affected by injunctive relief from this Court.

**COUNT ONE**
**APPLICATION FOR INJUNCTIVE RELIEF**

73. Plaintiffs repeat and re-allege paragraphs 1 - 72 as if set forth in full.

74. Plaintiffs' constitutional rights will be irreparably harmed if a permanent injunction (and, if necessary, a preliminary injunction and temporary restraining order) are not issued against the SEC's administrative proceeding. Plaintiffs have a substantial likelihood of success on the merits of their claim. Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs, absent injunctive relief, far outweighs any harm to the SEC if they are granted. Finally, the grant of an injunction will serve the public interest in the protection of parties' constitutional rights.

**COUNT TWO**
**DECLARATORY JUDGMENT**

75. Plaintiffs repeat and re-allege paragraphs 1 - 74 as if set forth in full.

76. Plaintiffs request a declaratory judgment that the statutory and regulatory provisions providing for the position and tenure protections of SEC ALJs are unconstitutional.

**Jury Demand**

77. Plaintiffs hereby demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A. An order and judgment declaring unconstitutional the statutory and regulatory provisions providing for the position of SEC ALJ and the tenure protections for that position.

B. An order and judgment enjoining the Commission from carrying out an administrative proceeding against Plaintiffs.

C. Such other and further relief as this Court may deem just and proper, including reasonable attorneys' fees and the costs of this action.

Dated: October 1, 2014
New York, NY

By: ______________________
Peter D. Hardy (*pro hac vice* application pending)
phardy@postschell.com
Carolyn Kendall (*pro hac vice* application pending)
ckendall@postschell.com
Abraham J. Rein (*pro hac vice* application pending)
arein@postschell.com
POST & SCHELL, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 587-1000

By: ______________________
Steven R. Glaser
steven.glaser@skadden.com
Boris Bershteyn
boris.bershteyn@skadden.com
Katie Rasor
katie.rasor@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000